(147 P.3d 158)
No. 96,260

IN THE MATTER OF THE ADOPTION OF S.A.M., A MINOR CHILD.

Opinion filed December 1, 2006.

*Karen Black*, of Salina, for appellant maternal grandmother.

*Julie McKenna*, of Salina, for appellee natural father.

Before RULON, C.J., GREENE and HILL, JJ.

RULON, C.J.: Petitioner, the maternal grandmother of S.A.M., a minor child, appeals the district court's dismissal of her adoption petition, contending the court erroneously found the natural father's acquittal of rape in a juvenile offender proceeding foreclosed the petitioner's attempt to terminate the natural father's parental rights for the commission of rape in the adoption proceeding. We reverse and remand for further proceedings.

On May 1, 2005, S.A.M. was born. The following day, the petitioner filed a petition for adoption, alleging she had obtained consent to adopt S.A.M. from the natural mother (petitioner's daughter), A.D.M. The petitioner further sought to terminate the parental rights of the alleged natural father, D.B.C., on the basis of rape of the natural mother under K.S.A. 59-2136(h)(6). The natural mother's relinquishment of rights to S.A.M. indicates that the identity of the natural father is unknown.

D.B.C. filed an answer, contesting the adoption and requesting testing to establish paternity. D.B.C. further denied the applicability of K.S.A. 59-2136(h)(6) (birth of child is the result of rape) to warrant termination of his parental rights. D.B.C. filed separate motions seeking parenting time with S.A.M. and requesting temporary custody of the child, which were denied pending a resolution of the adoption proceeding.

Ultimately, D.B.C. filed a motion to dismiss the adoption petition, primarily relying upon collateral estoppel. D.B.C. claimed, because he had been acquitted of rape in juvenile adjudication proceedings instigated by a complaint filed by A.D.M., the petitioner was precluded from relitigating the issue in the adoption proceedings. The district court adopted D.B.C.'s collateral estoppel argument and dismissed the adoption proceeding. Announcing its decision from the bench, the court stated:

"The Court notes and takes judicial notice of the fact that the juvenile court with proper jurisdiction has previously heard a case against [D.B.C.] wherein it was alleged that [D.B.C.] committed rape at the time of the conception of this child.

"The Court in the juvenile matter and with proper jurisdiction found [D.B.C.] not guilty or responsible for that rape.

. . . .

"The Court has given a great deal of thought to the issue of the term rape as used in the adoption statute. The Court can only conclude that that—that quote use of the term quote, rape, end of quote has only a technical significance of being a criminal charge. And it makes sense to this Court that any person guilty of rape should not benefit from the fruits of his crime. And I think that is the reason the term rape has been used in the manner in which it has in the adoption case, but is strictly in this Court's opinion used as a criminal terminology. And with that decision, the Court cannot see how this adoption can proceed upon an allegation of rape against [D.B.C.] when a court of competent jurisdiction has found him not guilty of that charge."

The petitioner filed a timely appeal of the dismissal of the adoption proceeding.

The sole issue raised in this appeal concerns the district court's ruling that the judgment in D.B.C.'s juvenile proceeding precluded the petitioner from seeking to terminate D.B.C.'s parental rights in an adoption proceeding under K.S.A. 59-2136(h)(6).

Generally, appellate review of a district court's decision regarding the termination of parental rights under K.S.A. 59-2136(h) is limited to whether the court's findings are supported by substantial competent evidence. *In re C.L.A.*, 31 Kan. App. 2d 536, Syl. ¶ 4, 106 P.3d 60 (2003). However, where, as here, the district court dismissed the adoption proceedings upon a legal conclusion, appellate review is unlimited. See *In re D.C.*, 32 Kan. App. 2d 962, 967, 92 P.3d 1138 (2004).

The district court held that "rape," as used in K.S.A. 59-2136(h)(6), specifically referred to the criminal conduct defined by K.S.A. 2005 Supp. 21-3502. The court then reasoned that a rape adjudication in D.B.C.'s juvenile offender proceedings was determinative of the matter raised under K.S.A. 59-2136(h)(6). Implicit in the court's first premise is a construction of the statute, which is a question of law subject to unlimited appellate review. *In re Adoption of B.M.W.*, 268 Kan. 871, 873, 2 P.3d 159 (2000).

In pertinent part, K.S.A. 59-2136(h)(6) provides:

"(h) When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:

. . . .

(6) the birth of the child was the result of rape of the mother."

When construing statutes, Kansas courts should seek to implement the legislature's intent. Generally, the legislature is presumed to have expressed its intent through the language employed in the statute. Consequently, a court should give words their ordinary meanings, and, where a statute is unambiguous, a court should give effect to the legislative intent expressed. *State v. Bryan*, 281 Kan. 157, 130 P.3d 85 (2006). Where an adoption statute is capable of competing interpretations, the court must strictly construe the statute in favor of maintaining the rights of the natural parent. *In re C.L.A.*, 31 Kan. App. 2d at 539.

Rape, when used in its legal context, invariably refers to criminal conduct. See generally Black's Law Dictionary 1288 (8th ed. 2004). In Kansas, crimes are defined exclusively by statute. *State v. Sexton*, 232 Kan. 539, 657 P.2d 43 (1983). Here, the district court properly found that rape within the meaning of K.S.A. 59-2136(h)(6) refers to the criminalized conduct found in K.S.A. 2005 Supp. 21-3502.

Nevertheless, a finding that the legislature intended to incorporate the legal definition of rape into K.S.A. 59-2136(h)(6) does not necessarily mean that use of the subsection is limited to cases in which a prior criminal or juvenile offender proceeding has determined the question of rape. The legislature did not require a conviction or juvenile adjudication for rape of the natural mother before terminating parental rights under K.S.A. 59-2136(h)(6). Accordingly, this court should not readily add such a requirement to the statute. See *Bryan*, 281 Kan. at 159.

As the petitioner indicated in her brief, collateral estoppel involves three elements: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judg-

ment; (2) the same parties have been involved in the previous litigation or are in privity with the previous parties; and (3) the issue resolved in the previous litigation must be necessary to the judgment. *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 458, 980 P.2d 1022 (1999). The district court's ruling with respect to the meaning of rape in K.S.A. 59-2136(h)(6) resolves only the third element.

A prior juvenile adjudication on a charge of rape is not necessarily determinative of rights and liabilities of the parties to an adoption proceeding in which a party seeks to terminate the natural father's parental rights under K.S.A. 59-2136(h)(6). The proceedings are intended for different purposes. The purpose of the adoption statute is to provide adequate placement of children. The purpose in prosecuting a criminal charge under the juvenile offender statutes is to impose punishment on a juvenile for the commission of a crime. The mere fact the same evidence may establish the rights and liabilities in each proceeding does not mean that a determination of criminal liability in a juvenile offender proceeding is equivalent to a placement determination in an adoption proceeding. See *Helvering v. Mitchell*, 303 U.S. 391, 397, 82 L. Ed. 917, 58 S. Ct. 630 (1938).

In *Helvering*, the Bureau of Internal Revenue sought to collect penalties associated with a deficiency in a tax filing through an administrative proceeding. The government had previously prosecuted the taxpayer for willfully attempting to evade and defeat the tax requirements of the Internal Revenue Act, but the taxpayer had been acquitted of the charge. Both proceedings were apparently based upon the same factual occurrence. As a result, the taxpayer attempted to challenge the administrative penalties on the basis of res judicata. 303 U.S. at 395, 397. Rejecting the taxpayer's argument, the United States Supreme Court distinguished the purpose of the administrative proceeding, which was remedial in nature, from the purpose of the criminal proceedings, which was punitive. 303 U.S. at 397. The Court further noted the burden of proof in each proceeding differed, stating, "The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata*." 303 U.S. at 397. This

reasoning has been adopted by the Kansas Supreme Court. See *Huelsman*, 267 Kan. at 462-64, concluding that an acquittal of DUI charges did not preclude the State from administratively suspending Huelsman's license under the Kansas implied consent law.

Similarly, a juvenile adjudication involving a charge of rape is a determination of guilt for a punitive purpose. The burden of proof in such cases is analogous to a criminal proceeding, requiring proof beyond a reasonable doubt. K.S.A. 38-1654; *State v. Hitt*, 273 Kan. 224, 232, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003). Contrarily, the burden of proof in a proceeding to terminate parental rights is less onerous than for a criminal adjudication, although heavier than for a typical civil proceeding. See K.S.A. 59-2136(h) (clear and convincing evidence standard). An acquittal of the criminal rape charge does not equate to a finding under a lesser burden of proof that the alleged natural father did not conceive the child by raping the natural mother.

Furthermore, the juvenile adjudication proceeding, which resulted in acquittal for D.B.C., was not prosecuted by a party with privity to the adoption proceedings. Legal privity was defined in *Huelsman* in the following manner:

"The fact the city exists and functions by virtue of laws adopted by the State is not determinative. What is determinative is that the information held by each of the parties is not readily available to both parties and neither party may have any knowledge that the other party is prosecuting, or is contemplating, a proceeding that would affect the other party if we held them to be in privity." 267 Kan. at 460.

The State of Kansas, through the Saline County Attorney's office, prosecuted the juvenile offender action; the petitioner, the maternal grandmother of S.A.M., has prosecuted the adoption proceeding. Clearly, a private individual, even a material witness, is not entitled to all of the information gathered by the State in a juvenile offender investigation. The fact the juvenile offender case may have been prosecuted solely upon evidence provided by A.D.M. and the petitioner does not create privity between the State and the petitioner.

Before the district court, D.B.C. argued the petitioner wanted to delay the adoption proceedings until the juvenile adjudication

proceeding was concluded because the juvenile offender proceeding would conclusively determine the rape issue in the adoption proceeding. However, knowledge of another proceeding does not equate with privity in that proceeding. Because the record on appeal contains nothing from the juvenile adjudication proceedings, this court cannot properly evaluate the privity claim. See *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 823-24, 74 P.3d 588 (2003) (noting that the appellant failed to provide any material from the criminal proceeding, which precluded meaningful appellate review of a collateral estoppel claim). On present showing, there is not substantial competent evidence to support a finding that such privity exists.

Consequently, although the two proceedings apparently concern primarily the same factual circumstance, the petitioner should not be precluded from seeking to prove that D.B.C. conceived S.A.M. by raping A.D.M. under the lower burden of proof available in adoption proceedings. Had the adoption proceeding determined that S.A.M. was born as the result of D.B.C.'s rape of A.D.M. prior to the juvenile offender proceeding, the State could not collaterally estop D.B.C. from litigating the issue because the State carries a higher burden of proof in juvenile offender proceedings. Conversely, the petitioner should not be collaterally estopped from attempting to demonstrate rape under the adoption proceeding's lower burden of proof, despite the respondent's acquittal in the juvenile offender proceedings.

The district court's judgment is reversed, and the case is remanded for further proceedings.