No. 95,029

JEREMY L. BRUCH, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.

148 P.3d 538

Opinion filed December 22, 2006.

*Michael S. Holland, II*, of Holland and Holland, of Russell, argued the cause, and *Michael S. Holland*, of the same firm, was with him on the brief for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The question we must resolve in this appeal is related to an administrative appeal from a driver's license suspension to a district court under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA). More specifically the question raised by this appeal is whether a petitioner must strictly comply with the statutory requirements of K.S.A. 77-614(b) in order to preserve his or her appellate rights. We answer this question yes and, for the reasons set forth in this opinion, we affirm the district court's dismissal for lack of jurisdiction.

Police officer Darrin Truan clocked Jeremy L. Bruch going 43 miles per hour in a 30-mile-per-hour zone and observed Bruch's vehicle twice cross the center line into the other lane before pulling him over. Bruch got out of the car to speak with the officer and did not have any difficulty communicating, nor was there any slurring of his speech. Bruch was staring and appeared to be concentrating, which the officer had observed with impaired people before, and one of his passengers was admittedly intoxicated. Bruch at first denied that he had been drinking. During the field sobriety tests, the officer began to smell the odor of alcohol, and he asked Bruch again if he had been drinking. Bruch responded that he had drunk something about 5 hours earlier, but he should be fine to drive. Although he technically passed the field sobriety tests, Bruch exhibited some clues of impairment. While Bruch took more than one preliminary breath test (PBT), the test that he consented to

take with Officer Truan yielded a .146 result. Bruch refused to take the Intoxilyzer breath test.

After being arrested for driving under the influence (DUI), Bruch's driving privileges were suspended following an administrative hearing. There was no transcript taken of the administrative hearing, but the handwritten notes of the hearing officer are included in the record on appeal:

"D. Truan - experience since 1992. R [Bruch] was clocked at 43 mph in a 30 mph. R stopped at 4th and Lorraine. R crossed the center line by a few inches one time. Vehicle stopped.
. . . .
"R exit vehicle walked toward officer asked if R had been drinking. At 1st R denied drinking. No odor of ETOH; R ID by KSDL.
. . . .
"PBT .146 - done just prior to arrest; officer still had possession of DL; R not free to go. 2 PBT.
. . . .
"ABC - missed the letter W. Walk and Turn - stepped off line x2; 1 clue; 1 leg stand - put foot down x2. R. stopped at count 27. Test not completed. Done in parking lot.
. . . .
"P.C. [probable cause]—ABC; Walk and Turn, 1 Leg stand; R had a stared look on face, odor of ETOH; R drank 5 hours ago and should be fine.
. . . .
"R. was arrested at 2:36 a.m. Taken to LEC."

Additionally, under the section titled "Other issues raised," the notes stated:

"(1) Lack of R.S. [reasonable suspicion] to start DUI investigation
"(2) *Lack of P.C. → PBT - improperly administer, and it is an illegal search.*
"(3) Due Process Violation inability to subpoena other relevant witness, as applied to licensee, and statute is unconstitution[al] on its face." (Emphasis added.)

Bruch filed a petition for review with the district court which provided in relevant part:

"1. Plaintiff, Jeremy L. Bruch, is a resident of Hutchinson, Kansas; that plaintiff is of legal age.
"2. Defendant Kansas Department of Revenue may be served with service of process and summons by service upon the Kansas Attorney General, 120 SW 10th, Topeka, Kansas 66612, and by service upon the Secretary of Revenue, State Office Building, Topeka, Kansas 66612.

"3. Plaintiff on the 27th day of March, 2004, and on the 7th day of October, 2004, had a valid driver's license or operator's license duly and legally issued by the Motor Vehicle Department of the State of Kansas.

"4. Plaintiff seeks review of the Kansas Department of Revenue's order entered on October 7, 2004, as a result of plaintiff's administrative hearing, suspending plaintiff's driver's license and subsequent statutory restrictions imposed on plaintiff's driver's license pursuant to K.S.A. 8-259.

"5. That on October 7, 2004, the Kansas Department of Revenue, Division of Vehicles, Driver Control Division, issued an order based upon K.S.A. 8-1001 et seq., suspending and/or restricting plaintiff's driving privileges.

"6. That plaintiff seeks review of all issues raised by plaintiff in the October 7, 2004, hearing before the administrative hearing officer, in Hutchinson, Reno County, Kansas.

"7. That the order suspending plaintiff's driving privileges should be vacated by this Court because the officer lacked reasonable suspicion to begin a DUI investigation; the office[r] lacked probable cause to arrest plaintiff; that plaintiff's due process rights were violated because he was not allowed to subpoena relevant witnesses to his administrative hearing; that plaintiff also seeks review of all issues raised before the administrative hearing officer at the October 7, 2004, hearing."

The Kansas Department of Revenue (Department) filed an answer alleging as an affirmative defense that the petition failed to state a claim on which relief could be granted because it failed to comply with K.S.A. 77-614(b). Subsequently, the Department filed a motion to dismiss specifying that the petition failed to set forth the mailing address of the petitioner, failed to identify the persons who were parties in the adjudicative proceeding that led to the agency action, failed to identify the agency action at issue or attach a copy of the order of the administrative action, and failed to allege any facts that demonstrate the petitioner is entitled to judicial review.

Bruch responded that he identified the Department in his petition; that the failure to include the address in the petition was a clerical error subject to amendment; that he identified the address of the Department in the summons; that he identified himself, the Department's hearing officer, the order, the subject of the order, and why it was improperly issued; and that the only facts that were required for him to establish he is entitled to judicial review under K.S.A. 8-259 are that an administrative hearing order was issued suspending his driving privileges.

The trial de novo before the district court began with the court hearing oral argument concerning the motion to dismiss. The Department argued that the failure to strictly comply with K.S.A. 77-614(b) deprived the court of subject matter jurisdiction under *Commissioner v. Bethlehem Steel Corp.*, 703 N.E.2d 680 (Ind. App. 1998), and *Pittsburg State University v. Kansas Bd. of Regents*, 30 Kan. App. 2d 37, 36 P.3d 853 (2001), *rev. denied* 273 Kan. 1036 (2002). Bruch distinguished those cases because an appeal under the Kansas Implied Consent Law is subject to a de novo review, while the typical appeal under the KJRA considers the facts actually introduced into evidence below and questions whether there was substantial evidence to support the administrative agency's actions. The district court decided to withhold its ruling until the end of the hearing.

Officer Truan was the only witness who testified at the trial. Relevant to this appeal, the officer testified that the device he used for the PBT had been approved by the Kansas Department of Health and Environment (KDHE); that he believed that it was over 15 minutes from the time of the stop until the time of the test; and that Bruch was given the required advisories. Bruch's counsel objected to the officer's testimony, contending no foundation was laid that the instrument used to perform the PBT was an approved device in Kansas, that the officer waited 15 minutes to perform the test, or that Bruch gave his knowing, voluntary, intelligent consent to the PBT. Bruch argued that consent to a PBT cannot be implied under *State v. Jones,* 279 Kan, 71, 106 P.3d 1 (2005), which applies Fourth Amendment requirements regarding illegally obtained evidence to civil proceedings such as this one. The court responded:

"THE COURT: I guess the first problem I'm having, Mr. Holland, is my review of the file coming in, those are completely new issues that were not raised below. You raised your issues below on issues of probable cause and not the technical issues as to the breath test which might, the reason that is done to allow the Department of Revenue to have some idea whether they needed to have more technical experts and witnesses here to testify. So I'm trying to get over the first hurdle; this is an issue that we're here to determine today, whether we're restricted to the issue of probable cause.

"MR. HOLLAND: Your Honor, two responses to that. Number one, this was raised below, specifically raised below and it was specifically testified to below with the objection being noted. And because of that Miss Kelly did not even introduce into evidence the preliminary breath test results. She didn't introduce it into evidence because there was not any evidence that the 15-minute deprivation period had taken place so that's actually not true.

"Second of all, the Fourth Amendment and the Kansas Administrative Regulations must be satisfied in order to admit the evidence into trial here. Has nothing to do with whether the issue was specifically raised. The preliminary breath test in and of itself isn't even an issue that can be, even be raised under the Kansas Implied Consent Law as an independent issue. The only way it could be raised is as a probable cause issue, so that's not true, Your Honor.

"THE COURT: Just to clarify matters then I will go ahead and rule on the sufficiency of the petition that was filed and I will find it is insufficient to meet the requirements because the court cannot, based on the record provided to me, determine that in fact those are the issues you say were raised, Mr. Holland. And I will find that in fact the motion to dismiss is granted for failing to meet the requirements of sufficiency to state in the petition and we will let the Court of Appeals determine that issue."

In affirming the suspension, the Journal Entry of Trial further provided:

"1. The plaintiff failed to allege sufficient facts in his petition to raise the issue of the admissibility of the Preliminary Breath Test results. The court further finds that this issue was not litigated by the plaintiff at the administrative hearing.

"2. Based upon the findings above, the court does not have subject matter jurisdiction.

"IT IS THEREFORE ORDERED that the administrative suspension of plaintiff's driving privileges is affirmed and that the suspension of plaintiff's drivers' license will begin on the (30th) thirtieth day after this journal entry is filed with the court."

### Jurisdiction over Driver's License

Bruch argues the district court erred in finding it did not have subject matter jurisdiction to conduct a trial de novo under K.S.A. 8-259 because the petition for review failed to meet the requirements of K.S.A. 77-614. In support of this argument, Bruch raises two issues: (1) the trial court misapplied the KJRA and corresponding case law because it failed to acknowledge that the de novo review provisions provided under K.S.A. 8-259 drastically change the application and necessity of the pleading requirements con-

tained in K.S.A. 77-614; and (2) Bruch satisfied the requirements of K.S.A. 77-614.

In response, the State raises several alternative arguments to support the decision of the district court which we have reordered for convenience: (1) the trial court lacked subject matter jurisdiction to consider the PBT issue because the issue was not raised at the administrative hearing or in the petition for review and the issues were beyond the applicable scope of review; (2) Bruch's petition does not comply with the requirements of K.S.A. 77-614; and (3) remand for new trial is unnecessary, as substantial competent evidence at trial established that the certifying officer had reasonable suspicion that Bruch was driving under the influence and was justified in detaining him for further investigation. Resolution of the issues in this case first requires a review of the relevant statutory framework.

### Relevant Statutory Framework

The Kansas implied consent statutes are found at K.S.A. 8-1001 *et seq.* A separate statute within the implied consent statutory scheme is devoted to preliminary breath tests and its use by law enforcement officers in the determination of whether probable cause exists that a licensee is operating his or her vehicle under the influence of alcohol. K.S.A. 8-1012 provides in relevant part:

"A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath to determine the alcohol concentration of the person's breath if the officer has reasonable grounds to believe that the person: (a) Has alcohol in the person's body; (b) has committed a traffic infraction; or (c) has been involved in a vehicle accident or collision. . . . If the person submits to the test, the results shall be *used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto.* A law enforcement officer may arrest a person based in whole or in part upon the results of a preliminary screening test. Such results shall not be admissible in any civil or criminal action *except to aid the court or hearing officer in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pursuant to K.S.A. 8-1001 and amendments thereto.* Following the preliminary screening test, additional tests may be requested pursuant to K.S.A. 8-1001 and amendments thereto." (Emphasis added.)

Under K.S.A. 2005 Supp. 8-1001(a), "[a]ny person who operates or attempts to operate a vehicle within this state is deemed to have given consent . . . to submit to . . . tests . . . of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol . . . ." "A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) if the officer has *reasonable grounds* to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol . . . ." K.S.A. 2005 Supp. 8-1001(b). One of the following conditions must also exist: (1) the person was arrested or "taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol"; or (2) the person was involved in an accident "resulting in property damage, personal injury or death." K.S.A. 2005 Supp. 8-1001(b).

K.S.A. 2005 Supp. 8-1001(f)(D) provides that if a person refuses to submit to and complete a breath, blood, or urine test, the person's driving privileges will be suspended for 1 year for the first occurrence. K.S.A. 8-1020(h)(1) provides that

"[i]f the officer certifies that the person refused the test, the scope of the [administrative] hearing shall be limited to whether:

(A) A law enforcement officer had *reasonable grounds* to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, or had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system;

(B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;

(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto; and

(D) the person refused to submit to and complete a test as requested by a law enforcement officer." (Emphasis added.)

Following an administrative hearing, K.S.A. 8-1020(o) provides that "[t]he licensee may file a petition for review of the hearing order pursuant to K.S.A. 8-259." K.S.A. 8-259 provides in relevant part:

"Except in the case of mandatory revocation under K.S.A. 8-254 or 8-286, and amendments thereto, mandatory suspension for an alcohol or drug-related conviction under subsection (b) of K.S.A. 8-1014 . . . the cancellation, suspension, revocation, disqualification or denial of a person's driving privileges by the division is subject to review. *Such review shall be in accordance with the act for judicial review and civil enforcement of agency actions. . . . The action for review shall be by trial de novo to the court.* The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension, cancellation or revocation under the provisions of this act." (Emphasis added.)

K.S.A. 77-610 of the KJRA provides: "Judicial review is initiated by filing a petition for judicial review in the appropriate court . . . ." K.S.A. 77-614(b) states that

"[a] petition for judicial review shall set forth:
    (1) The name and mailing address of the petitioner;
    (2) the name and mailing address of the agency whose action is at issue;
    (3) identification of the agency action at issue, together with a duplicate copy, summary or brief description of the agency action;
    (4) identification of persons who were parties in any adjudicative proceedings that led to the agency action;
    (5) facts to demonstrate that the petitioner is entitled to obtain judicial review;
    (6) the petitioner's reasons for believing that relief should be granted; and
    (7) a request for relief, specifying the type and extent of relief requested."

Following a trial de novo, this court reviews the trial court's license suspension to determine if it is supported by substantial competent evidence. *Drake v. Kansas Dept. of Revenue,* 272 Kan. 231, 233-34, 32 P.3d 705 (2001). However, the interpretation of the statute is a question of law, and this court's review is unlimited. *Babe Houser Motor Co. v. Tetreault,* 270 Kan. 502, 506, 14 P.3d 1149 (2000).

The heart of Bruch's attempted appeal involves the PBT administered to him after he was stopped by the officer. If, for reasons specified by Bruch in his argument before the trial court, the PBT was not admissible at the administrative hearing, no probable cause existed to request a test under K.S.A. 2005 Supp. 8-1001(a) or to arrest Bruch for DUI, thereby making the request to take a test unwarranted. As evidenced by the transcript of hearing before the district court, Bruch contended in his appeal to the district court that there was no basis for requesting a PBT, that there was no

showing that the law enforcement officer waited the required 15 minutes before requesting a PBT, and that the officer violated Bruch's rights under the Fourth Amendment of the United States Constitution in administering the PBT. Bruch asserts that, for all the above reasons, the PBT was inadmissible and provided no basis for probable cause to warrant the officer's request for a test under K.S.A. 2005 Supp. 8-1001(a) or for ultimate suspension of his license.

In addition, Bruch contended in his petition, without providing any facts, that no reasonable suspicion existed to commence a DUI investigation. He also alleged that he was not allowed to call any witnesses at the administrative hearing except those witnesses authorized by law. Petitioner fails to identify any witnesses he would have called or how this limitation affected the administrative action.

### Jurisdiction Over Preliminary Breath Test Issue

Although Bruch's argument focuses on the requirements of K.S.A. 77-614, the Department raises a preliminary related argument as to whether the district court had subject matter jurisdiction of the PBT issue on appeal. The Department argues that the district court lacked subject matter jurisdiction to consider the PBT issue because it was not raised at the administrative hearing or in the petition for review. The Department further contends that the issues framed by Bruch fall outside the applicable scope of review under K.S.A. 8-1020(h)(1). Thus, the Department asserts the district court's ruling was correct as a matter of law even if its reasoning was not clearly stated. See *Bergstrom v. Noah*, 266 Kan. 847, 875-76, 974 P.2d 531 (1999) (if a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision).

Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492 (2005). Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction. *Kansas Bd.*

*of Regents v. Skinner,* 267 Kan. 808, Syl. ¶ 5, 987 P.2d 1096 (1999). Whether subject matter jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Back-Wenzel v. Williams,* 279 Kan. 346, 347, 109 P.3d 1194 (2005). In deciding whether jurisdiction exists, the interpretation of a statute is likewise a question of law subject to unlimited review. *Griffin v. Suzuki Motor Corp.,* 280 Kan. 447, 451, 124 P.3d 57 (2005).

"In a motor vehicle license suspension case, unless an issue is first adequately raised at the administrative hearing, it may not be raised for the first time during the district court's de novo review conducted pursuant to K.S.A. 8-259(a)." *Soza v. Kansas Dept. of Revenue,* 33 Kan. App. 2d 254, Syl. ¶1, 100 P.3d 102 (2004); see also *Kempke v. Kansas Dept. of Revenue,* 281 Kan. 770, 795, 133 P.3d 104 (2006) ("licensee bears the burden of adequately raising those issues of concern at the administrative hearing in order to raise them before the district court").

Thus, the first determination is whether the issue concerning proper foundation and consent to the PBT was litigated at the administrative hearing. See *State v. Jones,* 279 Kan. 71, Syl. ¶ ¶ 2, 4, 106 P.3d 1 (2005) (PBT is a search subject to the strictures of the Fourth Amendment, and the implied consent provisions of K.S.A. 8-1001 do not apply to the administration of PBT's.). Bruch's counsel told the district court that this issue was litigated and that the administrative hearing officer refused to admit the results of the PBT.

As there is no transcript of the administrative hearing, we must rely upon the administrative hearing notes to determine what issues were raised below. Contrary to the Department's assertion, the PBT results are included in the administrative hearing notes. Under the provision "[o]ther issues raised," the notes do provide: "Lack of P.C. → PBT-improperly administer, and it is an illegal search." As such, it does appear that this issue was raised at the hearing below.

The next determination is whether the issues raised in the petition for review fall within the applicable scope of review under K.S.A. 8-1020(h)(1). Bruch raised the following issues:

"[T]he officer lacked reasonable suspicion to begin a DUI investigation; the office[r] lacked probable cause to arrest plaintiff; that plaintiff's due process rights were violated because he was not allowed to subpoena relevant witnesses to his administrative hearing; that plaintiff also seeks review of all issues raised before the administrative hearing officer at the October 7, 2004, hearing."

In attacking the petition for review, the Department argues that the administrative hearing notes show *"reasonable grounds* for officer's belief that plaintiff was operating a vehicle while under the influence" was not actually litigated nor raised as an issue below. Rather, the only issues raised related to the officer's *reasonable suspicion* to begin the investigation or *probable cause* to arrest, and although Bruch contends the PBT issue falls under the probable cause to arrest issue, neither of these issues are found in the scope of review of the administrative hearing set forth in K.S.A. 8-1020(h)(1).

As set forth above, 8-1020(h)(1) provides that relevant to this issue, the scope of the hearing is limited to whether the officer had *reasonable grounds* to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol and the person was in custody or arrested for an alcohol- or drug-related offense. As the trial de novo may only be upon issues raised at the administrative hearing, the specific issues raised in the petition in this case, *i.e.*, reasonable suspicion to begin the investigation and probable cause to arrest, do not fall under the applicable scope of review.

However, the issue of whether an officer had reasonable grounds to believe the person was operating or attempting to operate a vehicle while DUI is strongly related to the issue of whether the officer had probable cause to arrest. In *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, 707, 815 P.2d 566 (1991), the Court of Appeals held that "reasonable grounds" equates to "probable cause," explaining:

" 'Probable cause' to arrest refers to knowledge of facts and circumstances which would lead a prudent person to believe a suspect is committing or has committed an offense. [Citation omitted.] Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. It is not necessary that the evidence relied upon establish guilt beyond a reasonable doubt. The evidence need not even prove that

guilt is more probable than not. It is sufficient if the information leads a reasonable officer to believe that guilt is more than a possibility. [Citation omitted.]" 15 Kan. App. 2d at 707.

See *State v. Jones,* 279 Kan. at 75; *Butcher v. Kansas Dept. of Revenue,* 34 Kan. App. 2d 826, 830, 124 P.3d 1078 (2005) (citing *Sullivan,* 15 Kan. App. 2d at 707).

For example, in *Vogel v. Kansas Dept. of Revenue,* No. 91,536, unpublished opinion filed November 5, 2004, the trial court did not make a specific ruling that the officer had reasonable grounds to request that Vogel submit to a formal breath alcohol test; however, the trial court did find that the officer had sufficient probable cause to arrest Vogel. The panel found that "[g]iven the relation of 'probable cause' to 'reasonable grounds,' a ruling that there was sufficient probable cause for an arrest also equates to a ruling that there were reasonable grounds to do so."

However, this court has found that

" '[w]hile "reasonable grounds" is synonymous in meaning with "probable cause," (see *Angle v. Kansas Dept. of Revenue,* 12 Kan. App. 2d 756, 766-67, 758 P.2d 226 [1988], *rev. denied* 243 Kan. 777 [1988]), one may have reasonable grounds to believe that a person was operating a vehicle under the influence but not have the probable cause required to arrest under K.S.A. 1995 Supp. 8-1001(b)(1). An arresting officer may formulate reasonable grounds sufficient to request a test under the statute before or after arrest and, under K.S.A. 1995 Supp. 8-1001(b)(2), without any arrest whatsoever.' " *Huelsman v. Kansas Dept. of Revenue,* 267 Kan. 456, 461, 980 P.2d 1022 (1999) (quoting *State v. Counseller,* 22 Kan. App. 2d 155, 158-59, 912 P.2d 757, *rev. denied* 260 Kan. 997 [1996]).

It is clear in this case that the PBT is relevant to whether an officer had reasonable grounds or probable cause to arrest. Under *Vogel,* if the officer had probable cause to arrest Bruch, then he likewise had reasonable grounds to suspect that he was DUI, which is an issue within the scope of K.S.A. 8-1020. Our determination of relevance, however, does not equate with a conclusion that this issue was properly set forth by petitioner in compliance with the provisions.

*K.S.A. 77-614(b)*

What degree of specificity is required for filing a petition for review from an agency action under K.S.A. 77-614(b) of the KJRA? The answer to this question provides the resolution of this appeal.

K.S.A. 77-614(b) provides:

"(b) A petition for judicial review shall set forth:
  (1) The name and mailing address of the petitioner;
  (2) the name and mailing address of the agency whose action is at issue;
  (3) identification of the agency action at issue, together with a duplicate copy, summary or brief description of the agency action;
  (4) identification of persons who were parties in any adjudicative proceedings that led to the agency action;
  (5) facts to demonstrate that the petitioner is entitled to obtain judicial review;
  (6) the petitioner's reasons for believing that relief should be granted; and
  (7) a request for relief, specifying the type and extent of relief requested."

Bruch argues that the district court misapplied the KJRA and corresponding case law, because it failed to acknowledge that the de novo review provisions provided under K.S.A. 8-259 "drastically changes" the application and necessity of the pleading requirements contained in K.S.A. 77-614(b). According to Bruch, because of the unique de novo hearing requirement in K.S.A. 8-259, "there is no need for [the] specificity [required in 77-614(b)]. . . . Discovery will be conducted, motions will be filed, and a pretrial, if necessary, can be conducted." When applying the requirements in light of the de novo provisions of K.S.A. 8-259, he contends the petition for review complied with K.S.A. 77-614(b). His position seems to indicate that, because the hearing is de novo, notice pleading is all that is required.

While the provisions of K.S.A. 77-614(b) do not expressly provide for strict compliance, the detail within the statute identifies what must be included in the pleading of a petition for review. Legislative history concerning the adoption of the KJRA provides little guidance. However, two helpful points emerge from the legislative hearings before the Kansas Legislature:

  (1) According to members of the Advisory Committee (more fully discussed below), the two main goals for the KJRA were uniform treatment of agency actions and increased accessibility to the court system.

  (2) Professor David Ryan, a member of the Administrative Procedures Advisory Committee that proposed the Kansas Administrative Procedure Act (KAPA) and KJRA, provides

some guidance. His article, *The New Kansas Administrative Procedure and Judicial Review Acts,* while brief, provides the most in-depth discussion of the requirements of K.S.A. 77-614. Ryan, *The New Kansas Administrative Procedure and Judicial Review Acts,* 54 J.K.B.A. 53, 64 (1985). We note that this article's discussion of K.S.A. 77-614 was quoted in *Pittsburg State University v. Kansas Bd. of Regents,* 30 Kan. App. 2d 37, 45, 36 P.3d 853 (2001), *rev. denied* 273 Kan. 1036 (2002), discussed below.

Professor Ryan noted that the KJRA was modeled after Article 5 of the Model State Administrative Procedure Act of 1981 (1981 MSAPA). Ryan, 54 J.K.B.A. at 54. In the absence of any definitive answer in the legislative history, we consulted the official comments of the 1981 MSAPA to determine whether they shed any light as to the intent behind the requirements of the petition for review under the KJRA. Section 5-109(b) of the 1981 MSAPA has language almost identical to K.S.A. 77-614(b):

"§ 05-109. [*Petition for Review—Filing and Contents*].
    . . . .
"(b) A petition for review must set forth:
    (1) the name and mailing address of the petitioner;
    (2) the name and mailing address of the agency whose action is at issue;
    (3) identification of the agency action at issue, together with a duplicate copy, summary, or brief description of the agency action;
    (4) identification of persons who were parties in any adjudicative proceedings that led to the agency action;
    (5) facts to demonstrate that the petitioner is entitled to obtain judicial review as described in §05-102(i), (ii), and (iii);
    (6) the petitioner's reasons for believing that relief should be granted; and
    (7) a request for relief, specifying the type and extent of relief requested." Model State Administrative Procedure Act § 5-109 (1981).

The only substantive difference between this language and the language of K.S.A. 77-614 is the change from the Model Act that the petition "must" set forth the provisions to the language adopted by our legislature that the petition "shall" set forth this information, a change approved by the House Judiciary Committee on February 13, 1984. The official comment to section 5-109 provides: "The detail contained in this section may serve as a guide to unrepre-

sented persons who wish to seek judicial review. It may also facilitate the judicial task, by requiring petitions to contain the specified material." Model State Administrative Procedure Act § 5-109 cmt. (1981).

The official comment to § 05-108 of the Draft Model State Administrative Procedures Act of 2004, whose language is identical to § 5-109 of the 1981 MSAPA, similarly explains that "[t]he detail will be of assistance to unrepresented parties and will also assist the court by requiring specified useful information."

While somewhat general in nature, the comments demonstrate that the aim of section 14, like that of the entire KJRA, is to assist people in filing their appeals from administrative actions and to "facilitate the judicial task." We believe the latter to mean that the specific pleading requirements may serve notice upon opposing parties and the reviewing court by identifying issues to be addressed on appeal and the facts as to why the petition should be reviewed.

In his article, Professor Ryan seems to indicate that this interpretation is correct in Kansas:

"The KJRA *specifically requires* the petition for review provide: (1) identification of the petitioner, (2) agency identification, (3) the agency action at issue including a brief description, (4) identification of the persons who were parties at the agency proceeding, (5) facts to demonstrate the petitioner is entitled to judicial review, (6) reasons for believing that relief should be granted, and (7) identification of the type and extent of relief requested. Obviously, the KJRA contemplates a petition that goes beyond the simple 'notice' petition which was conceptually the cornerstone of the new Code of Civil Procedure a few decades ago in this state. The reason is quite simple. By having a universal remedy that is universally available under one form of action no matter what type of agency action is challenged, the petition itself becomes significant in terms of identifying the type of agency action challenged. It is important to know whether the agency action is basically a rule challenge or is appeal of a specific order. One reason is critical. The timeliness for filing the different types are significantly different, *supra*. In addition, because the remedies under K.S.A. 77-622 constitute the broad range of all remedies conceptually available, then the kind of agency action complained of need be identified as well as the kind of relief requested. In other words, *specificity in pleading is necessary to provide a more manageable framework for processing the petition within this 'universal' appeal structure*." (Emphasis added.) Ryan, 54 J.K.B.A. at 66-67.

Courts in other jurisdictions have disagreed as to the resolution of this issue. Arizona has adopted a doctrine of "substantial compliance," whereby the petition for review from administrative actions becomes a modified notice pleading. In *Hilde v. Arizona Dept. of Economic Sec.*, 166 Ariz. 498, 499, 803 P.2d 909 (1990), the Arizona Supreme Court stated that

"[i]t is more in line with the purpose of the statute to say that if the request for review pursuant to A.R.S. § 23-672(F) [which delineates the pleading requirements for judicial review of administrative actions] gives the reader a *fair indication* of why the party feels aggrieved, that is enough to satisfy the requirement that the request for review contain *appropriate* citations." (Emphasis added.)

Iowa courts, on the other hand, have adopted a much more stringent standard. As the Iowa Supreme Court explained in *Kohorst v. Iowa State Commerce Com'n.*, 348 N.W.2d 619, 621 (Iowa 1984):

"While the rules of civil procedure are applicable to proceedings for judicial review of agency action, this is only so if a rule does not conflict with the particular provisions of the IAPA. [Citation omitted.] Notice pleading is not applicable to an appellate review proceeding under Chapter 17A since the pleading requirements of section 17A.19(4) are much more stringent than those required in an original action under [civil procedure] rule 69. Unlike an original action where the issues may develop and change in the course of presenting evidence and making proof, the proof is not susceptible to change in the appellate process. Moreover, an opposing party is entitled to know the exact nature of the claimed errors, and each error must be separately and distinctly stated so an opponent can adequately prepare and respond to the issues being reviewed. [Citation omitted.]"

The Iowa court's reasoning regarding the differences between general notice pleading and the specified pleading requirements for petitions for review is persuasive. First, the Kansas Legislature in K.S.A. 77-614 enumerated specific requirements that "shall" be included in the petition for review—rather than deferring to the notice pleading requirements in chapter 60—indicating that the legislature meant to reject mere notice pleading in judicial review of administrative actions. Secondly, the nature of the proceedings before the district court when reviewing an administrative action is *appellate*. As the Iowa court reasoned, "[u]nlike an original action where the issues may develop and change in the course of pre-

senting evidence and making proof, the proof is not susceptible to change in the appellate process." *Kohorst*, 348 N.W.2d at 621.

This strict compliance standard has also been applied in Pennsylvania. See *Larocca v. W.C.A.B.*, 140 Pa. Commw. 192, 199, 592 A.2d 757 (1991) ("The statement of objections to the governmental determination has been held to constitute the 'heart' of the petition for review, and, without it, no issue has been preserved for appellate review."). Thus, there is no need for the flexibility provided by notice pleading or even a modified notice pleading. What is required is that a petitioner comply with the provisions of the statute.

We conclude that a strict compliance standard, like the one that has been adopted in Iowa and Pennsylvania, is more in keeping with the overall intent of the Kansas Legislature in enacting the KJRA. K.S.A. 77-614 is much more akin to the Iowa statute cited than the Arizona law. Compare Iowa Code § 17A.19(4) (2005) with Ariz. Rev. Stat. § 23-672(F) (2005). Moreover, Professor Ryan explained that the Kansas pleading requirements were intended to create a more "manageable framework," for reviewing agency actions. 54 J.K.B.A. at 67. We believe that this is best served by a specific pleading requirement, which would apprise both the court and the agency of the positions to be raised. Compliance with the specific language of K.S.A. 77-614(b) meets the strict compliance requirement.

The Kansas Court of Appeals has addressed the pleading requirement in *Pittsburg State University v. Kansas Bd. of Regents*, 30 Kan. App. 2d 37, 36 P.3d 853 (2001). There, the court considered whether the petition for review was sufficient to confer jurisdiction under K.S.A. 77-614(b) where it failed to name the agency, Public Employee Relations Board (PERB), in the case caption and listed the Kansas Department of Human Resources (KDHR) as the respondent agency and listed the KDHR's mailing address. The court first found that the rules of civil procedure could be used to amend the case caption despite the strict compliance rule of the KJRA because the KJRA does not have a caption requirement. 30 Kan. App. 2d at 41.

However, the court found that "[a] petition for judicial review of an agency action is jurisdictional," and the "[f]ailure to comply with the pleading requirements set forth in K.S.A. 77-614(b) *precludes a litigant's statutorily granted right of appeal.*" (Emphasis added.) 30 Kan. App. 2d 37, Syl. ¶ 3; see also *State v. Pieren-Abbott v. Kansas Dept. of Revenue,* 279 Kan. 83, 97, 106 P.3d 492 (2005) (agreeing with *Pittsburg State* decision). Discussing the text of Professor Ryan's article above, the *Pittsburg State* court explained:

"As Professor Ryan's analysis indicates, specificity in pleading under the KJRA is necessary to give focus to the asserted agency error and to give the reviewing court a proper understanding of the type of relief sought.

"Although different, the petition for judicial review under the KJRA serves a similar function to the notice of appeal in general civil cases. In such cases, it has long been the rule that our appellate courts lack jurisdiction to consider rulings which are not identified in the notice of appeal. See *Hess v. St. Francis Regional Med. Center,* 254 Kan. 715, Syl. ¶ 1, 869 P.2d 598 (1994); *State v. Marble,* 21 Kan. App. 2d 509, 519, 901 P.2d 521, *rev. denied* 258 Kan. 861 (1995).

"We reject the holding in *University of Kansas* [*v. Department of Human Resources,* 20 Kan. App. 2d 354, 887 P.2d 1147 (1995),] that the petition for judicial review is not jurisdictional. Instead, we hold that the failure to comply with the pleading requirements set forth in K.S.A. 77-614(b) precludes a litigant's statutorily granted right of appeal." 30 Kan. App. 2d at 45-46.

Bruch acknowledges *Pittsburg State* but argues there is no need for this specificity in a petition filed under K.S.A. 8-259 because the trial is de novo. He argues this judicial review of a KDR suspension is completely different than a typical judicial review under the KJRA, where it is conducted on the administrative record and the court is only seeking to determine if the agency action is supported by substantial competent evidence. He argues that the nature of the petition for review in a "typical case" is much more important because it must give the court detailed argument as to why the administrative action should be overturned solely on the record from below. In contrast under 8-259, Bruch asserts that neither the court nor the agency is limited to relying upon the petition to determine the validity of the petition for review. Thus, he contends there is no logical reason to strictly apply the KJRA to de novo hearings under 8-259.

The Department counters that strict compliance with the pleading requirements set forth in K.S.A. 77-614(b) is legal, logical, and practical for administrative agencies and the courts to process all of the appeals being taken. The Department contends it would be a ridiculous result to allow plaintiff to ignore the pleading requirements of the statute, when the plaintiff has the information but simply does not provide it, and force the agency and the district court to sort out the necessary and correct information.

While K.S.A. 8-259 provides for a de novo appeal, it further provides that "[s]uch review shall be in accordance with the act for judicial review and civil enforcement of agency actions." Bruch would have us ignore the specific statutory requirements of K.S.A. 77-614 because the appeal is de novo. For all of the above reasons, the procedures set forth by the legislature in the KJRA control, whether it be de novo appeal or an appeal on the record. We may not ignore the plain language of the KJRA in its determination of whether jurisdiction exists on a de novo appeal. Moreover, the reasons for strict pleading in the petition for review in K.S.A. 77-614 as discussed in *Pittsburg State* and Professor Ryan's article apply with equal force in a de novo appeal.

The district court on administrative appeal needs to be aware of what type of appeal it is considering in order to determine whether the petition was timely filed—this is not altered by de novo review. Second, while the appeal is de novo, only issues raised before the administrative hearing can be considered on appeal. In *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 764-65, 758 P.2d 226 (1988), the Court of Appeals held that despite the de novo proceeding in the district court, issues must be litigated below or the appeal to our court "is not truly appellate" in nature, reasoning:

"We conclude, however, that plaintiff should be restricted to those issues raised at the administrative hearing because of the principles applied in *Nurge*, 234 Kan. 316-17. First, statutes purporting to grant de novo review should be strictly construed. *Second, even though this is a de novo review, the proceeding is still predominantly appellate in nature. If plaintiff may raise a completely new issue and produce evidence before the court not produced below, effectively the agency action is ignored and the proceeding is not truly appellate.* We conclude it was error for the trial court to consider whether the horizontal gaze tests were correctly administered when that issue was not raised at the administrative hearing.

"From our reading of these cases addressing de novo review, *the Supreme Court has not interpreted any statute to allow true de novo review in the sense of a new trial on facts and issues as though they had never been tried.* Even under the de novo review recognized in KCCR cases, the court is restricted to those issues preserved in a motion for rehearing before the commission and to a review of the agency record." (Emphasis added.)

*Angle* thus highlights the fact that despite being subject to de novo review, the process is still appellate in nature. Thus, specificity in pleading is vital for the district court to determine whether it has jurisdiction to consider the issues on appeal. This is especially true because no transcript is taken of many administrative hearings and the district court is most often reviewing handwritten notes taken by the administrative hearing officer in an attempt to determine what issues were litigated below.

Finally, in this same vein, "specificity in pleading under the KJRA is necessary to give focus to the asserted agency error and to give the reviewing court a proper understanding of the type of relief sought." *Pittsburg State*, 30 Kan. App. 2d at 45. The case we now consider provides a good example of why specificity in pleading is necessary. As indicated above, there is an entire statute in the implied consent statutory scheme relating to the admissibility of a PBT and its use both in the administrative hearing and before a court. K.S.A. 8-1012. However, the petition for review filed by Bruch did not address the statute or identify the issues involving the PBT in its petition for review.

The district court was unaware from the petition for review filed by Bruch that he intended to raise the issue of the admissibility of the PBT results at the de novo hearing. Nor was there any indication in his petition for review that petitioner intended to raise a constitutional issue involving the consent to take the PBT. The heart of Bruch's appeal involved both of these issues regarding the PBT, as evidenced by the transcript of the hearing before the district court on appeal. The first notice the district court or the Department had that Bruch intended to raise these issues was at the de novo hearing itself. Bruch has not demonstrated that the de novo review process should alter *Pittsburg State's* ruling that the petition for review is jurisdictional and the failure to comply with

the pleading requirements set forth in K.S.A. 77-614(b) precludes a litigant's statutorily granted right of appeal.

The final issue for consideration is whether Bruch provided the specificity required by K.S.A. 77-614(b). We conclude that he did not. Although Bruch addresses all of the requirements under 77-614(b), it is important to recall that the district court's reasons for dismissing the case were that the pleading did not set forth sufficient facts to raise the issue of the admissibility of the PBT and that the issue was not litigated at the administrative hearing. As indicated above, the issue of the PBT was raised at the administrative hearing, and the district court erred in concluding otherwise. However, the trial court correctly concluded that there were not sufficient facts to raise the issue of the admissibility of the PBT, which provided a basis for its dismissal.

K.S.A. 77-614(b)(5) requires the petition to include "facts to demonstrate that the petitioner is entitled to obtain judicial review." An additional related requirement, 77-614(b)(6), requires that it include "the petitioner's reasons for believing that relief should be granted." Bruch again argues that the de novo review does not require a discussion of the individual issues on appeal and that the PBT issue was part of the probable cause to arrest issue set forth in the petition for review. As discussed above, this argument is without merit.

In *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d at 766-67, the plaintiff argued that the issue of the administration of the horizontal gaze test was raised at the administrative hearing, because the issue of reasonable grounds was argued. The Court of Appeals rejected this argument reasoning that

"[t]his definition of issue, however, is too expansive. Any of the grounds for revocation specified by the statute could be challenged by a licensee with a variety of arguments. If the agency is not made aware of the argument at the hearing, it cannot truly be said that the court in the de novo hearing is reviewing the agency action." 12 Kan. App. 2d at 765.

In *Hinton v. Kansas Dept. of Revenue*, No. 90,806, unpublished opinion filed October 8, 2004, Hinton's petition for review claimed she was entitled to relief "based on the lack of reasonable belief by [the police officer] to request [that she] submit to the prelimi-

nary breath test. [Police officer] did not have reasonable grounds to believe [she] was operating the vehicle while under the influence of alcohol." However, at the trial de novo before the district court, the sole issue litigated was the reason for the car stop. On appeal, the Court of Appeals *sua sponte* found that the trial court lacked jurisdiction to decide whether the officer had a reasonable basis to stop Hinton because of her failure to comply with the specific pleading requirements set forth in 77-614(a) and *Pittsburg State.* See also *Sahgal v. University of Kansas Medical Ctr.*, No. 93,780, unpublished opinion filed November 10, 2005 ("[T]he provisions of the KJRA have been construed by our courts to require strict compliance.").

Bruch failed to strictly comply with subsections (b)(5) and (b)(6) of K.S.A. 77-614, because he failed to state in the petition for review that he was raising the issues of administration of and consent to the PBT, as indicated by the transcript before the district court. Nothing in his petition for review identifies these issues relating to the PBT, which are the heart of Bruch's appeal. Although *Angle* involves a different jurisdiction/issue, its language is instructive. Bruch's argument that these issues fell under the broad umbrella of the "probable cause" to arrest issue is without merit. "Probable cause to arrest," even if taken as the reviewable issue of whether there were "reasonable grounds" to believe the licensee was DUI, is far too expansive of an issue, as it could include any number of arguments. 12 Kan. App. 2d at 765. Bruch's broad statement concerning probable cause does not provide the Department or the district court with any focus on the agency error to be addressed at trial.

We also find it significant that the implied consent statutory scheme includes a separate statute involving PBT's, and Bruch failed to identify the provisions of that statute as well as any issues relating to PBT's, except by his broad statement relating to reasonable suspicion and probable cause in his petition for review. As such, Bruch did not strictly comply with the pleading requirements of K.S.A. 77-614(b)(5) or (6).

While other issues of compliance with the requirements of 77-614(b) were raised and argued by the parties, our focus is on the

heart of the petitioner's appeal raised before the district court. In this regard, the ultimate conclusion of the court that "[t]he plaintiff failed to allege sufficient facts in his petition to raise the issue of the admissibility of the Preliminary Breath Test results" supports its conclusion that the "court does not have subject matter jurisdiction." A petition for review under K.S.A. 8-259 must strictly comply with the pleading requirements of K.S.A. 77-614(b), even though it is subject to de novo review. Bruch failed to strictly comply with the provisions of K.S.A. 77-614(b), and the district court correctly dismissed his petition for review for lack of subject matter jurisdiction.

Affirmed.